### In re David Douglas TAYLOR and Linda Sue Taylor, Debtors.

#### USAA Federal Savings Bank, Appellant,

v.

#### Don Thacker, Chapter 7 Trustee, Appellee.

**BAP No. WW–07–1313–MkMoD.**
**Bankruptcy No. 05–49369–pbs.**
**Adv. No. 07–04025–pbs.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 21, 2008.

Filed June 20, 2008.

---

20. *Id.* at 904.

21. *Id.* at 904–05.

22. *In re Dorsey,* 505 F.3d at 398 (emphasis added).

23. *In re Mersmann,* 505 F.3d at 1047 (citation omitted).

Lawrence G. Reinhold, Weinstein & Riley, P.S., Huntington Woods, MI, for David and Linda Taylor, Appellants.

Thomas W. Stilley, Portland, OR, for Don Thacker, Ch. 7 Trustee, Appellee.

Before MARKELL, MONTALI and DUNN, Bankruptcy Judges.

## OPINION

MARKELL, Bankruptcy Judge.

## I. FACTS

The facts of this case are not in dispute, and they present a common pattern. On August 30, 2005, the debtors bought a 2005 Toyota Camry for $19,500, borrowing $18,020 of the purchase price from USAA Federal Savings Bank ("USAA"). They granted USAA a security interest in the car to secure their loan.

On September 15, 2005, to perfect its security interest, USAA filed an initial application for a certificate of title with the Idaho Department of Transportation. The application requested that the certificate of title, when issued, note USAA's security interest. Under Idaho law at the time, applications for certificates of title had to be accompanied by an affidavit that attested to an inspection confirming the car's Vehicle Identification Number ("VIN"). USAA did not provide such an affidavit.

USAA corrected its error on September 20, 2005, when it submitted a new application for title, this time with the required VIN inspection affidavit. Under applicable Idaho law, USAA's security interest became perfected on September 20.

On September 28, 2005, the debtors filed a chapter 7 [1] bankruptcy petition. They

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as enacted and promulgated before the effective date (October 17, 2005) of the relevant provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23 (2005), and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

continued to make their car payments to USAA.

On February 23, 2007, approximately seventeen months after debtors' bankruptcy filing, the debtors' trustee, Don Thacker, filed a preference action against USAA under § 547. On February 28, 2007, USAA answered, raising the enabling loan defense under § 547(c)(3).

On July 3, 2007, the trustee filed a motion for summary judgment. Based on the undisputed facts, he contended that perfection of the security interest in the car was preferential.

In defense, USAA invoked § 547(c)(3).[2] USAA contended that although § 547(c)(3) gave it only 20 days to perfect its security interest, Idaho law at the time gave it an additional 20 days to complete the perfection requirements. IDAHO CODE ANN. § 49-510. Put another way, USAA claimed that because it had made its incomplete filing within § 547(c)(3)'s 20–day enabling loan period, and then satisfied Idaho's relation-back statute when it later submitted its completed VIN inspection affidavit, it should receive the benefit of § 547(c)(3)'s defense. But the bankruptcy court concluded that the enabling loan exception was not applicable because the Idaho grace period did not apply to federal preference law.

The bankruptcy court then turned to remedies. While the trustee could have simply avoided the security interest and taken the car from the debtors and sold it, neither he nor USAA wanted that outcome.

Citing § 550(a), the trustee sought a judgment for the value of USAA's security interest in the debtors' car as of the date of the debtors' bankruptcy filing. Although he might have elected to confine his recovery to the avoidance given him by § 547, that remedy would not have put the estate in the same position as it would have been in had the perfection not occurred. For the estate to benefit from a simple avoidance, the trustee would have had to take the car from the debtors (and there is no doubt that the car was property of the estate enabling him to do so),[3] and sell it for whatever it would fetch without the security interest attached, and then distribute the proceeds to the debtors' creditors. But seventeen months had passed since the debtors filed bankruptcy. During that time, as noted, the debtors had continued making their monthly payments to USAA.[4] Also during that time, the value of the car had declined, from $19,500 at filing to $14,240. Were avoidance the only remedy, the estate would not be in the same position as if the transfer had not occurred, as it would not have been able to recover the payments or the depreciation from USAA.[5]

---

**2.** At the times relevant here, § 547(c)(3) stated:

> (c) The trustee may not avoid under this section a transfer—...
> (3) that creates a security interest in property acquired by the debtor—
> (A) to the extent such security interest secures new value ...; and
> (B) that is perfected on or before 20 days after the debtor receives possession of such property[.]

**3.** The court took judicial notice of the fact that the debtors had not exempted the car

because they had used their applicable automobile exemption on another vehicle.

**4.** At the hearing on the summary judgment, the court agreed with debtors' counsel that the debtors needed the car for their personal needs.

**5.** The postpetition payments were not preferences under § 547 because they occurred after, not during the 90 days before, the bankruptcy filing. 11 U.S.C. § 547(b)(4)(A). They were not avoidable postpetition payments because the source of the payments, the debtors'

USAA argued that the only remedy available was avoidance of its security interest, which would give the estate a lien-free car that the trustee could sell. It argued that the remedies provided by § 550—recovery of the property or a money judgment for its value—were either futile or precluded by § 550(a)'s language. Recovery was futile because it would have transferred the property right (the security interest) to the trustee without also transferring the contract rights governing its use. As USAA argued, a security interest without a debt is an empty, valueless concept. In addition, USAA also argued that a money judgment was unavailable. It contended that since § 550(a) states that a money judgment is available only "to the extent that a transfer is avoided," and since a simple money judgment would not also avoid its security interest as against the debtors, the language of § 550(a) precluded the court's entering a money judgment. The trustee responded that, for at least two reasons, simple avoidance would not restore the estate to the position it would have been in but for the preferential transfer. First, the value of the car had declined since the filing, so a sale of the car would have yielded less money to the estate. Second, because the debtors had continued to make payments to USAA in the period between their bankruptcy filing and the trustee's preference complaint, the monthly payments roughly compensated USAA for the loss in value.

The bankruptcy court agreed with the trustee. It stated, "If a lien were avoided, the debtor's obligation would become an unsecured debt, ... and the estate's only

remedy would be to sell the vehicle...." Hr'g Tr. 18:1–4 (August 1, 2007). The court was also concerned that the debtors would lose the car even though they had made postpetition payments. The court stated further, "By this ruling, the lien would be avoided under 547(b) only between the defendant and the trustee. The lien will remain in effect between the debtors and the defendant." Hr'g. Tr. 18:10–13 (August 1, 2007).

The court thus found that the trustee was entitled to judgment against USAA for the value of its security interest as of the time the debtors filed their case. It granted summary judgment in favor of the trustee, and on August 10, 2007, it entered a simple money judgment against USAA in the amount of $18,020, plus interest.[6] It also gave USAA, conditioned upon payment of the judgment, an allowed unsecured claim for the amount of the judgment. USAA filed a timely notice of appeal.

## II. ISSUES

1. Does a state relation-back statute control for determining the date of perfection under § 547(c)(3)?

2. What form of recovery is the trustee entitled to when the preferential transfer of a security interest is avoided?

## III. JURISDICTION

■ The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 157(b)(2)(F). Given the judgment in favor of the trustee on all counts, the summary judgment is "a *complete* act of adjudication, that is, a full

---

postpetition earnings from services, were not "property of the estate," *id.* § 541(a)(6), and one of the elements of avoiding postpetition transfers under § 549 is that the transfer be "a transfer of property of the estate." *Id.* § 549(a).

**6.** The order granting summary judgment also indicated that USAA would be entitled to an allowed unsecured claim in the amount of the judgment upon satisfaction of the judgment.

adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter" (internal quotation marks omitted). *Brown v. Wilshire Credit Corp. (In re Brown)*, 484 F.3d 1116, 1120 (9th Cir.2007) (emphasis in original) (quoting *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir.1990)). As such, it is a final order, and we have jurisdiction under 28 U.S.C. § 158.

## IV. STANDARDS OF REVIEW

■ "We review the bankruptcy court's conclusions of law and questions of statutory interpretation de novo, and factual findings for clear error." *Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 410 (9th Cir. BAP 1999) (citations omitted). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been made. *Wall Street Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 99 (9th Cir. BAP 2006).

## V. DISCUSSION

### A. The Security Interest Perfection Was Preferential.

■ A transfer of any interest of a debtor in property is avoidable as a preference if it is made: (1) to or for the benefit of a creditor, (2) on account of an antecedent debt, (3) while the debtor is insolvent, (4) within 90 days of filing the bankruptcy petition,[7] and (5) in such a way that it enables the creditor to receive more than if the transfer had not been made. 11 U.S.C. § 547(b)(1)-(5).

■ There is no question that USAA perfected its security interest 21 days after debtors granted it. Under § 547, as it existed at the time of the transaction, such perfection constituted a transfer of the entire security interest as of that day. 11 U.S.C. § 547(e)(2)(B). "Under the Code, a transfer of a security interest does not occur until after all of the . . . steps [related to perfection] are completed, and the interest is perfected under state law." 4 NORTON BANKR.L. & PRAC. 3d § 66:11 (2008).

■ The other elements of a preference were also met. The transfer of the security interest was made to USAA, a creditor on an antecedent debt. An antecedent debt is a debt that arises before the transfer, and here the debtors' borrowing of $18,020 on August 30, 2005 qualifies as the antecedent debt to which the late act of perfection related. The perfection was complete eight days before the debtors' bankruptcy filing, thus bringing it within the 90–day preference period.[8] Finally, if a debtor is insolvent, as were the debtors here, a secured creditor with valuable collateral will always fare better than if that creditor were wholly unsecured. A secured creditor receives dollar-for-dollar recovery on that portion of its claim that is secured, as opposed to the less–than–100% recovery the same creditor would have received if the claim had been unsecured. *See Comm. of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)*, 59 F.3d 969, 972 (9th Cir. 1995), *cert. denied*, 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996). The trustee thus met his burden of showing the elements of a preference. 11 U.S.C. § 547(g).

---

**7.** Section 547(b)(4)(B) extends this reachback period to one year for insiders, as defined in § 101(31). There is no doubt that USAA is not an insider in this case.

**8.** During this 90–day period, a debtor is presumed to be insolvent, 11 U.S.C. § 547(f). That presumption applies here since USAA presented no evidence to the contrary.

 The burden of establishing a defense under § 547(c)(3)is on the creditor, 11 U.S.C. § 547(g), and that defense applies if the creditor extends credit and takes a security interest to enable the debtor to acquire property. 11 U.S.C. § 547(c)(3)(A). As in effect at the time of this transaction, the defense also required perfection of the security interest within 20 days of its creation. 11 U.S.C. § 547(c)(3)(B).[9]

 As noted above, it is undisputed that the perfection happened 21 days after the creation of the antecedent debt, one day beyond § 547(c)(3)(B)'s limit. USAA, however, contends that it should benefit from the grace period provided under IDAHO CODE ANN. § 49–510 (2005) to bring its perfection back within the then-applicable 20–day period of § 547(c)(3).

 Section 547(c)(3) is exacting. Even if the antecedent debt was a purchase-money debt that enabled the debtor to acquire property, perfection of a security interest in that newly acquired property more than 20 days after funding the purchase-money loan is preferential. *Fitzgerald v. First Sec. Bank of Idaho, N.A. (In re Walker)*, 77 F.3d 322, 323–24 (9th Cir. 1996). But Idaho law in 2005 was less exacting. It allowed a creditor 20 days to make its filing with the state agency, and an additional 20 days to correct filing mistakes or to complete the paperwork. IDAHO CODE ANN. § 49–510 (2005).[10]

In essence, Idaho law set out two 20–day periods. In the first, the secured creditor had 20 days to make an initial filing. If that filing was complete, then the creditor was perfected as of the date of "creation". But if that filing was not complete, the secured creditor had an additional 20 days to complete or correct it. If the completion or the correction was accomplished within this 20–day period, the perfection date would then be deemed to be the initial date of filing.

 Section 547(c)(3) also contained an initial 20–day relation-back period. But it did not contain the additional grace period to make corrections that Idaho law did. This normally would be the end of the analysis, as federal law controls the dates for purposes of avoidance under § 547. USAA argues, however, that the Idaho statute's grace period did not "extend" the filing period but instead "preserve[d]" it. This distinction, USAA argues, renders inapplicable those decisions of the Supreme Court, the Ninth Circuit, and this panel that hold that state law cannot extend the time period. *Fidelity Financial Servs., Inc. v. Fink*, 522 U.S. 211, 213–15, 118

---

**9.** At the time the petition in this case was filed, the enabling loan period under Section 547(c)(3) was 20 days. BAPCPA extended the time period to 30 days. BAPCPA, Pub.L. 109–8, § 1222, 119 Stat. 23, 174 (2005).

**10.** The statute stated, in pertinent part:
 A lien is perfected as of the time of its creation if the transaction is notarized and if the filing is completed with the department or an agent of the department within twenty (20) calendar days thereafter; otherwise, as of the date of the filing with the department or an agent of the department. If the title application is incomplete or if the supporting documents are incomplete or missing, the title application and supporting documents as submitted will be returned to the lienholder or his successor, agent or assignee for correction and, if the application is not resubmitted in a complete form, including completed supporting documents, to the department or to the agent of the department within twenty (20) days of their having been returned to the lienholder or his successor, agent or assignee, the original date of receipt by the department or agent of the department shall be void.
Idaho law has since changed to eliminate the grace period altogether. *See* IDAHO CODE ANN. § 49–510 (2007).

S.Ct. 651, 139 L.Ed.2d 571 (1998); *In re Walker*, 77 F.3d at 323; *Long v. Joe Romania Chevrolet, Inc. (In re Loken)*, 175 B.R. 56, 60 (9th Cir. BAP 1994).

 USAA's argument fails because of the well-settled rule that what is relevant is not the first action a creditor takes to perfect its security interest, but the last. *Fink*, 522 U.S. at 213–15, 118 S.Ct. 651. Indeed, this panel has previously stated that in determining the time of perfection, a bankruptcy court should look at the "last necessary act." *In re Loken*, 175 B.R. at 63–64. *See also In re Walker*, 77 F.3d at 323–24, *cited by Fink*, 522 U.S. at 214 n. 2, 118 S.Ct. 651 (resolving a circuit split in favor of a rule barring the application of state relation-back periods for the time of perfection under § 547(c)(3)).

Here, the last necessary act occurred on the twenty-first day after attachment of USAA's security interest when USAA resubmitted its documents to the Idaho Department of Transportation. While that may be sufficient under Idaho law, it is too late for § 547(c)(3). As a result, USAA failed to show that the 20–day requirement of § 547(c)(3) was met. Since it could not establish its defense, it was not error to find an avoidable preference.[11]

## 1. The Remedy Was Appropriate and Within the Bankruptcy Court's Discretion to Award.

After the bankruptcy court found it could avoid the debtors' transfer of a per-fected security interest to USAA, it turned to the appropriate remedy. It invoked § 550(a) to award money damages in an amount equal to the value of the interest avoided in lieu of making the avoidance permanent. This remedy allowed USAA to retain its security interest on the car along with its contract rights against the debtors.

USAA objected. It argued that the only recovery to which the trustee was entitled was recovery of the avoided security interest, because that was the only interest transferred. It then contended that a security interest without a debt is valueless, and thus money damages are not available on these facts. In short, USAA argues that all that the trustee was empowered to do was to avoid the security interest and then sell the car for the benefit of the estate.

 We begin by examining § 550(a), which all parties agree controls this discussion. That section provides, in relevant part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property[.]

---

11. On November 23, 2007, the trustee filed a motion for sanctions under Fed. R. Bankr.P. 8020. The trustee alleged that USAA's arguments on the existence of a preference were frivolous because the result was obvious. The trustee argued that USAA was arguing in the face of long-established precedent without distinguishing that precedent. The trustee further argued that USAA's appeal with regard to recovery had no merit in light of the bankruptcy court's extensive findings of fact and law.

On December 10, 2007, USAA responded that its appeal was not sanctionable because the trustee failed to show that the appeal was made in bad faith.

Although the issue is close, and we do not believe that Rule 8020 requires a showing of bad faith, *cf. George v. City of Morro Bay (In re George)*, 322 F.3d 586, 591–92 (9th Cir.2003), the award of sanctions is discretionary, and we decline to sanction USAA or its counsel on this record.

The plain language of this provision allows a trustee to recover either "the property transferred" or "the value of such property" rather than the property itself. Although there is no statutory directive on when one recovery is preferred, it is clear that there may only be one recovery. 11 U.S.C. § 550(d).

Generally, the purpose of § 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 883 (9th Cir.2008) (internal quotation marks omitted, but quoting both *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 812 (9th Cir.1994) and *Morris v. Kan. Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D.Kan.1991)). In achieving this goal, courts have liberally exercised their discretion and used the tools given by the statute to ensure that the estate is made whole. *See, e.g., Dobin v. Hill (In re Hill)*, 342 B.R. 183, 205 (Bankr.D.N.J.2006); *Wellington Apt., LLC v. Clotworthy (In re Wellington Apt., LLC)*, 350 B.R. 213, 247–48 (Bankr.E.D.Va.2006) (if ordering a return of the property transferred would require unwinding a complex real estate transaction and would injure innocent third parties, court would enter a money judgment); *Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 137–38 (Bankr.W.D.Pa. 2004) (a money judgment should be rendered when returning the property itself would require partition); *In re Classic Drywall, Inc.*, 127 B.R. at 877; *see also* 5 COLLIER ON BANKRUPTCY ¶ 550.02[5] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2008) ("Factors considered by courts in making this decision of whether to order recovery of the property or its value include whether the property is recoverable, whether the property has diminished in value by virtue of depreciation or conversion, whether there is conflicting evidence as to the value of the property and whether the value of the property is readily determinable and a monetary award would result in a savings to the estate.").

USAA argues for a rigid interpretation of § 550's remedial powers.[12] Under its view of § 550(a), a bankruptcy court may order recovery only of the security interest and not the value of the security interest. Its argument relies on the grammar of the first sentence of § 550(a): the option to recover the value of the property transfer is available only "to the extent that a transfer is avoided. . . ." Here, the bankruptcy court's judgment did not avoid USAA's security interest. Instead, the court specifically kept the security interest in place, and it leap-frogged to a money judgment without any intervening avoidance.

In making this argument, USAA cites opinions from one court in the Middle District of Georgia. These decisions hold that when a preferential transfer of a security interest transfers a lien, not a vehicle, recovery should be limited to avoidance of the security interest. *Kelley v. Chevy Chase Bank (In re Smith)*, 236 B.R. 91, 100 (Bankr.M.D.Ga.1999); *Kelley v. General Motors Acceptance Corp. (In re Farm-*

---

12. USAA also argued that once avoided, a security interest is void *ab initio* and cites *Kelley v. Chevy Chase Bank (In re Smith)*, 236 B.R. 91, 100 (Bankr.M.D.Ga.1999), for that proposition. This overstates the power of avoidance. Avoidance under any of the substantive sections does not destroy the security interest. If it did, then the first part of § 550 would be nonsense, as it would give the court an option that did not exist. Rather, avoidance under § 547 here merely allows either the transfer of the security interest or the value of the security interest to the estate.

*er)*, 209 B.R. 1022, 1024–25 (Bankr. M.D.Ga.1997).

But neither of these cases states that a money judgment is never appropriate in an avoidance action involving a consumer. Indeed, the bankruptcy court in *Farmer* acknowledged that there may be appropriate cases in which a monetary judgment was appropriate, and that the selection of pure lien avoidance was that court's considered judgment as to the best outcome. *In re Farmer*, 209 B.R. at 1025 ("While there are circumstances in which an award of the value of the property transferred is appropriate, no such circumstances exist in this instant case."). The issue thus becomes whether the discretion exercised by the bankruptcy court in choosing a monetary award was the appropriate remedy "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re Straightline Invs., Inc.*, 525 F.3d at 883.

USAA's rigid interpretation of § 550(a) does not achieve this goal. While USAA correctly identifies the objective of § 550(a), it argues that this objective may be achieved only by transferring the security interest to the bankruptcy estate. A more flexible approach, which this panel adopts, focuses on matching the recovery to the avoidance, and in such cases, the remedy chosen by the bankruptcy court here ably satisfies this goal.

This flexible approach, which reviews the bankruptcy court's decision as to remedy under an abuse of discretion standard, is grounded in a common sense reading of § 550(a). As the Supreme Court has stated, "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. United States Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)) (in turn quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). This plain meaning, however, must take into account the context of the statute we are called upon to interpret. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

Here, we are required to construe § 547(b) with § 550(a). As we decided above, the trustee has shown that the perfection of the security interest in the car met all of the elements of § 547(b), and that there were no defenses available under § 547(c). Under such circumstances, § 547(b) indicates that the trustee "may avoid [the] transfer...." Section 550(a) then provides that "to the extent that a transfer is avoided ..., the trustee may recover ... the property transferred, or, if the court so orders, the value of the property...."

We hold that this language gives the trustee, subject to the discretion of the court, the ability to seek either the property transferred (in this case, the security interest) or its value (here, $18,020).[13]

13. USAA contends that the value of the security interest in the trustee's hands is zero, since avoidance would transfer only the security interest to the estate, and would not also transfer any contract rights associated with that security interest. *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207, 1210 (10th Cir.2008). Put simply, USAA asserts

Otherwise, the first part of § 550(a) would be superfluous; after avoidance under § 547, it would make little sense to reaffirm that avoidance in § 550(a). We think the difference means that after establishing the right to avoidance under § 547—or any of the other avoiding powers enumerated in § 550(a)—the trustee may ratify that avoidance and seek the property transferred or ignore the transfer and seek a substitute remedy: a monetary judgment for the value of the property transferred. In making this choice, the trustee will be guided by whichever remedy better serves the goal of placing the estate in the same financial position it would have been in but for the transfer.

This option aspect is also reaffirmed by § 550(d), which limits the trustee to a single satisfaction. Section 550(d) precludes the trustee from recovering both the property transferred and its value (which could occur if the property had been transferred by the initial transferee). If § 550(a) were read as USAA suggests, there would be a conflict between the two remedies specified in § 550(a)—after the avoidance required by USAA, § 550(d) would preclude the trustee's request for a money judgment since the trustee's avoidance and recovery of the property would constitute its single satisfaction. Put another way, to give effect to all of the words in § 550(a), the trustee has to have a meaningful choice between recovering the property transferred and its value, and USAA's in-

terpretation denies that choice. We thus decline to adopt USAA's interpretation here.

USAA's argument does not mesh with congressional intent, as noted by Judge Leif Clark:

> The effect of the qualifying phrase "to the extent that a transfer is avoided" is "that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c)." 124 Cong Rec H11097 (daily ed. Sept. 28, 1978); S17414 (daily ed. Oct. 6, 1978); (remarks of Rep. Edwards and Sen. DeConcini). This suggests that "avoided" in § 550 is not in the past tense, but instead the present perfect. That is, § 550 does not require that the transfer be avoided in a temporally antecedent and separate procedure, but simply recognizes the limitations placed on recovery by the safe harbors for certain transfers found in provisions such as § 548(c).

*Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts Plus+, Inc.)*, 220 B.R. 331, 335 (Bankr.W.D.Tex.1998).[14]

Against this background, the Ninth Circuit has indicated, once a trustee demonstrates the right to avoid a transfer, "[the] trustee must then establish the *amount* of recovery under § 550(a)." *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir.1994) (emphasis in original).[15]

---

that having rights to a security interest without also controlling the related contract rights means that the security interest has no value. We think, however, that the value recovered should be the value to the creditor of its security interest at the time of the transfer, in this case $18,020.

**14.** It has been noted that Judge Clark was in error: Section 550(a) does not use the present perfect tense. *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 81 n. 3 (Bankr.S.D.N.Y.2006). If it did, it would say

"to the extent that the trustee has avoided." But the point of grammar is irrelevant to the point made here: Section § 550(a) gives an estate a choice between the actual property transferred or its value.

**15.** Put another way, § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." S.Rep. No. 95–989, at 90 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876; H.R.Rep. No. 95–595, at 375 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331.

Under this view, § 550 specifies who is liable for repayment of the avoided or avoidable transfer, and empowers the trustee to recover the property transferred or its value for the benefit of the estate. *Joseph v. Madray (In re Brun)*, 360 B.R. 669, 672 (Bankr.C.D.Cal.2007).

■ Here, were the security interest avoided, and no more, USAA would be an unsecured creditor for the unpaid amount of its loan. The estate would hold the security interest under § 551, but as long as the debtors made their payments, or otherwise avoided default, the security interest could not be foreclosed. This would create an awkward situation in which the debtors would retain a car encumbered by a security interest in favor of the trustee, with, however, secured obligations running to and controlled by USAA. As long as the debtors wish to retain the car, and the trustee does not wish to sell it, this state of affairs does not assist the trustee, the estate, or the debtors' creditors.

The trustee's chosen remedy is more in line with the goal of placing the estate in the position it would have been in if the transfer of the security interest had not occurred. *Cf. In re Straightline Invs., Inc.*, 525 F.3d at 883. Instead of avoiding the security interest as to USAA, the trustee elected to take a money judgment against USAA in the amount of the security interest's value as of the filing date. This effectively reversed the effect of USAA's late perfection. If affirmed, USAA would have to give up the value it acquired from perfection (since the security interest would have been good outside of bankruptcy against other creditors under Idaho law). This option also keeps the security interest and the obligations it secured in the same entity—USAA.

This more flexible interpretation of § 550(a) is also in line with those decisions allowing the trustee to recover the value of an avoided transfer from mediate and intermediate transferees even if the actual transfer is not set aside as to the initial transferee. As the Eleventh Circuit has stated, in those circumstances a strict interpretation of § 550(a) creates a "harsh and inflexible result that runs counterintuitive to the nature of avoidance actions." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 704 (11th Cir.2005); *see also Woods & Erickson v. Leonard (In re AVI, Inc.)*, 389 B.R. 721 (9th Cir. BAP 2008). The Eleventh Circuit quoted a decision of the District Court for the Northern District of California, which in turn quoted the Seventh Circuit's decision in *In re Deprizio* for the proposition that "[t]he 'to the extent' language [in Section 550(a) ] simply recognizes that transfers sometimes may be avoided only in part, and that only the avoided portion of a transfer is recoverable." *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D.Cal. 1996) (citing *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874 F.2d 1186, 1195–96 (7th Cir.1989)). *See also Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 915–16 (Bankr.D.Nev.2005). *Contra Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir.1992); *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75 (Bankr.S.D.N.Y.2006).

The heart of the Eleventh Circuit precedent is that the "to the extent" language in § 550(a) does not require any particular remedy with respect to avoidance. Instead, it means that recovery is possible "to the extent" that the transferee is not protected by another provision of the Bankruptcy Code. *See In re Int'l Admin. Serv.*, 408 F.3d at 706. Indeed, this interpretation recognizes that avoidance is the prerequisite for recovery, and where there

 

is no avoidance, there is no recovery. As a result, "to the extent" in § 550(a) does not limit the means of recovery. Once a right to avoid is established, the bankruptcy court may properly exercise its discretion to give the trustee the form of recovery that would restore the estate to the position it would have been in if the transfer had not occurred and maximize the value returned to the bankruptcy estate. *See In re Classic Drywall, Inc.*, 127 B.R. at 877.

This result is further reinforced by a recent Tenth Circuit Court of Appeals decision regarding the interest preserved under § 551. *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207 (10th Cir.2008). In *Haberman,* the Tenth Circuit held that avoidance is limited to a specific interest in property and not to all rights appurtenant to that property. *Id.* at 1212.[16] In *Haberman,* the trustee successfully avoided the transfer of a security interest as preferential and requested both the value of the security interest and an amount equal to the deficiency balance on the underlying contract. The Tenth Circuit stated that the security interest and the underlying contract were two separate legal interests. *Id.* at 1210–12. The security interest represented the creditor's right to repossess its collateral upon default, and the contract represented the creditor's right to receive payments from the debtor. The Tenth Circuit essentially held that trustee's avoidance of the security interest did not affect the creditor's separate right to receive payments. *Id.* at 1212. This illustrates that the "to the extent" language in § 550(a) does not prevent recovery of the value of a security interest, as was approved here, but it does prevent recovery of a property interest that was not avoided.

For the foregoing reasons, the bankruptcy court's decision to award the value of the security interest in lieu of transferring the security interest was a proper exercise of the court's discretion. As a matter of law, it was proper because perfection of the security interest was an avoidable preference, and so the transfer was avoidable. Since the transfer was avoidable, recovery was possible, and it was within the court's discretion to determine the proper form and amount of recovery.

## VI. CONCLUSION

This panel will not disturb the bankruptcy court's determination as to liability or as to remedy. The liability decision rested on a sound basis, and the decision regarding the remedy awarded was well within the bankruptcy court's discretion.

AFFIRMED.

---

16. In *Haberman,* as here, the trustee pursued the lender for a monetary judgment. The lender in that case, however, chose not to

contest the type of relief sought. *In re Haberman,* 516 F.3d at 1209 n. 2.